IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CANDICE BAIRD, | : | Case No. 1:07-CV-736 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER DENYING PLAINTIFF'S |
| | : | MOTION TO STRIKE PART OF |
| VILLAGE OF CLEVES, et al., | : | DEFENDANTS' REPLY |
| | : | MEMORANDUM AND GRANTING |
| Defendants. | : | IN PART AND DENYING IN PART |
| | : | DEFENDANTS' MOTION FOR |
| | : | SUMMARY JUDGMENT |

This matter is before the Court on Defendants' Motion for Summary Judgment as to All Claims (doc. 11) and Plaintiff's Motion to Strike Part of Defendants' Reply Memorandum (doc. 25). Plaintiff Candice Baird filed this suit against Defendants Village of Cleves and Village of Cleves Police Officer Kyle Gray. Plaintiff asserts federal claims against Officer Gray under 42 U.S.C. § 1981 et. seq. for violations of her right to be free from false arrest, false imprisonment, and unlawful searches.[1] (Doc. 1.) Plaintiff also asserts federal civil rights claims against the Village of Cleves, alleging that it failed to properly train Officer Gray and executed a policy, practice, or custom of stopping her because she was driving with a black passenger in the car. (Id.) Finally, Plaintiff asserts a state law malicious prosecution claim against both Defendants. (Id.) Defendants move for summary judgment as to all of Plaintiff's claims. (Doc. 11.) Plaintiff opposes Defendants' motion. (Doc. 20.) Plaintiff also filed a Motion to Strike Part of Defendants' Reply Memorandum (doc. 25), which Defendants oppose (doc. 26). For the reasons that follow, the Court **DENIES** Plaintiff's Motion to Strike Part of Defendants' Reply

---

[1] Officer Gray is sued in both his official and individual capacities.

Memorandum and **GRANTS** in part and **DENIES** in part Defendants' Motion for Summary Judgment.

## I.   BACKGROUND[2]

Sometime between 7:00 p.m. and 8:00 p.m. on July 15, 2006, Candice Baird, a white female, was driving a white Oldsmobile through the Village of Cleves on U.S. Route 50.[3] (See Gray Dep. 21:5-13; Baird Dep. 54:20-55:2.) Tashawn Ware, a black male, was sitting in the passenger seat of Baird's vehicle. (Baird Dep. 12:14-17.) Baird was driving at a speed of fifty miles per hour when Officer Gray[4] passed her going the opposite direction. There were other cars traveling in front of Baird. During his deposition, Officer Gray testified that Baird was following the vehicle in front of her too closely and that some type of damage to the front of her vehicle – damage either to the front end, the grill, or a headlight – caught his eye. (Gray Dep. 17:17-25) According to Officer Gray, it was still light outside at the time he spotted Baird's vehicle. (Id. at 21:14-16.) Baird testified during her deposition that she did not recall driving too close to another vehicle but knew that she was not driving within twenty feet of another vehicle. (Baird Dep. 43:1-6.) Baird also testified that her vehicle has not at any time had any damage to the front end, the grill, or the headlights. (Id. at 67:13-23.)

---

[2] Except where otherwise indicated, this statement of facts is based on Defendants' Proposed Undisputed Facts (doc. 11 at 13-15) and Plaintiff's Response thereto (doc. 20 at 18-20).

[3] Baird claims that she was pulled over at approximately 7:10 p.m., while Officer Gray estimated that he first saw Baird's car around 7:50 p.m.

[4] Officer Gray no longer works for the Village of Cleves. Since March 2007, he has been with the Hamilton County Sheriff's Office. At all times relevant to the instant case, Officer Gray was acting in his capacity as a police officer for the Village of Cleves.

After seeing Baird's vehicle, Officer Gray turned around, pulled up alongside Baird's vehicle, looked at Baird, and then slowed down and pulled behind Baird. According to Officer Gray, traffic was heavy and there was another white car driving the same "pack" of vehicles as Baird. (Gray Dep. 18:2-6, 22:15-23:25.) Officer Gray testified that in order to verify which white car he had targeted prior to turning around, he pulled up next to Baird's car and looked for the front end damage that he believed he had seen when traveling in the opposite direction. (Id. at 22:15-23:25.) Tashawn Ware, the passenger in Baird's vehicle, testified that Officer Gray did not appear to look at the front of Baird's vehicle when he pulled alongside her. (Ware Dep. 37:23-38:17.) Rather, according to Ware, Officer Gray looked at Ware and Baird a couple times before slowing down and pulling behind Baird. (Id.)

After pulling behind Baird, Officer Gray initiated a traffic stop. During the first few minutes of the stop, Officer Gray approached Baird's vehicle, obtained both Baird's and Ware's driver's licenses, and then returned to his police cruiser and conducted a routine computerized background check of Baird and Ware. The computerized query revealed that Ware had a history of drug related charges. Ware had been convicted of two or three minor drug offenses, carrying a concealed weapon, assault, and lying to a police officer during an investigation. While running the background check, Officer Gray observed Ware make what he described as "furtive movements in the vehicle." (Gray Dep. 18:15-16.) According to Officer Gray, Ware appeared to reach underneath and behind the passenger seat. He then made movements near the armrest and center console in between the front seats. (Id. at 29:19-24.) When asked about the alleged movements at her deposition, Baird testified that she had not seen Ware reach behind, around, or underneath his seat at any time during the stop. (Baird Dep. 45:19-46:23.) Ware also testified

3

that he did not move after Baird was pulled over and did not place anything under the seat. (Ware Dep. 39:1-7.)

After a few minutes, Officer Gray returned to Baird's vehicle and asked her to step out of the car to speak with him. Officer Gray spoke with Baird for a few minutes. (Gray Dep. 30-31.) During that time, he asked if there was anything illegal in the car and, after a pause, Baird said, "no." (Id. at 18:24-19:5, 31:2-8.) Officer Gray then told Baird to take a seat in her vehicle and walked around to the passenger side to ask Ware to step out of the car. (Id. at 31:12-20.) After Ware exited the vehicle, Officer Gray performed a pat-down search for weapons and asked him if he had anything illegal on him or in the vehicle. (Id. at 19:9-11; 39:5-9; Baird Dep. 37:12-16.) According to Officer Gray, that question made Ware visibly nervous. (Gray Dep. 19:11.) Officer Gray also testified that Ware had difficulty answering some questions and was visibly shaking. (Id. at 32:17-21.) Baird also appeared nervous. (Id. at 18:23-24.)

After questioning Ware, Officer Gray asked Baird for permission to search her vehicle. By that point, Baird was hysterical and refused to consent to a search of the car. (Id. at 19:13-15; Ware Dep. 10:5-7.) Officer Gray informed her that he was going to call in a canine unit and explained to Baird that if a drug detection dog were to walk around her vehicle and indicate positive for drugs, she would have no choice as to whether or not he could look in the vehicle. (Gray Dep. 19:16-20:1.) Baird told Officer Gray to do what he had to do. (Id. at 20:1.) Officer Gray then called for an available canine unit.[5]

---

[5] During his deposition, Green Township Police Officer Chris Stone, who responded to the call for a canine unit, testified that he was dispatched to the scene at approximately 8:04 p.m. (Stone Dep. 14:10-20.)

Officer Gray directed Baird and Ware to remain beside the guardrail.[6] While they were waiting, Officer Gray asked Ware when the last time was that he had been in trouble. (Ware Dep. 10:18-20.) Ware testified during his deposition that he had responded that he had never had drugs or been in trouble for drugs and that there were no drugs in the car. (Id. at 10:19-25.) Later, during the same deposition, Ware described his response in more detail:

> My answer was I ain't had so much as a weed ticket since '99, some 2000, and, you know, that was the only – that's all I can remember, is him asking me about – something about drugs, and I told him, no. I ain't got no drugs. I ain't been in trouble for no drugs no time recently, no time, especially not no hard type of drugs. I had a weed ticket. I told him I had a weed ticket back in 2000 because he was asking.

(Id. at 15:4-11.)

After some period of time,[7] Green Township Police Officer Chris Stone responded to the scene with his dog. Baird and Ware testified that Officer Gray placed both of them in the back of his police car for the duration of the time that the dog was outside.[8] (Baird Dep. 38:9-13; Ware Dep. 20:9-17.) Officer Stone walked the dog walked around Baird's vehicle and the dog did not indicate the presence of any drugs or other contraband. Officer Stone then asked Baird if

---

[6] During his deposition, Officer Gray indicated that he asked both Baird and Ware to get back into the vehicle and that they waited inside the vehicle for the canine unit to arrive. (Gray Dep. 33:16-34:10.) However, in their Proposed Undisputed Facts (doc. 11 at 14, ¶ 19), Defendants assert that Officer Gray directed both Baird and Ware to wait by the guardrail. Because Plaintiff accepted this assertion as fact, (Plaintiff's Response to Proposed Undisputed Facts, doc. 20 at 19) the Court also treats it as an undisputed fact and disregards Officer Gray's testimony.

[7] According to Officer Gray, Officer Stone arrived on the scene about ten to fifteen minutes after Officer Gray called for a canine unit. (Gray Dep. 20:2-6.) Ware claims that they waited forty-five minutes to one and a half hours for Officer Stone to arrive. (Ware Dep. 17:9-15.)

[8] According to Baird, Officer Gray took the keys out of his car at that time and made sure all of the windows were closed.

5

she would allow him to place the dog inside of her car. (Baird Dep. 38:22-24.) Baird refused to allow Officer Stone access to the interior of her vehicle. (Id. at 39:3.) Upon Baird's refusal of consent, Officer Stone spoke briefly with Officer Gray and then left the scene. (Id. at 39:5-6.)

After Officer Stone left, Officer Gray allowed Baird and Ware to return to Baird's car. (Id. at 39:6-8.) Officer Gray then issued a traffic citation for failing to maintain sufficient space between moving vehicles and left the scene. (Gray Dep. 20:7-14.) Baird testified that the entire stop lasted approximately one and a quarter to one and a half hours. (Baird Dep. 39:16-19.) Baird chose to challenge that traffic ticket, (see id. at 15), and the citation was ultimately dismissed because Officer Gray did not appear in court the day of the hearing.[9]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to

---

[9] Officer Gray contends he was never notified to appear in court. (Gray Dep. 35:13-23.)

defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. A genuine issue for trial exists when the evidence is not "so one-sided that one party must prevail as a matter of law." Id. at 252.

In reviewing the evidence set forth by both the moving and non-moving parties, the Court must carefully review "those portions of the submitted evidence designated by" both parties. Guarino v. Brookfield Twp. Tr's., 980 F.2d 399, 410 (6th Cir. 1992). However, the Court will not "sua sponte comb the record from the partisan perspective of an advocate for the non-moving [or moving] party." Id.

### III. ANALYSIS

#### A. Plaintiff's Motion to Strike

The Court considers as an initial matter Plaintiff's Motion to Strike Part of Defendants' Reply Memorandum. In that motion, Baird argues that the discussion of furtive movements in Defendants' reply should be stricken because Defendants did not address this "new argument" in its motion for summary judgment. (Doc. 25 at 1.) Defendants respond that their discussion of Officer Gray's testimony that he observed Ware make furtive movements in Baird's car is not a new argument. Indeed, the Court finds that Defendants' reply memorandum does not raise a new argument. By citing to the testimony at issue, Defendants merely point out additional support for arguments raised in their motion for summary judgment. Officer Gray's deposition transcript was filed the same day as Defendants' motion for summary judgment and was readily

7

available for Plaintiff's review. This is not a case in which Plaintiff has been surprised by new evidence. Accordingly, the Court denies Plaintiff's motion to strike.

### B. Federal Claims Against Village of Cleves and Official Capacity Claims Against Officer Gray

To the extent Plaintiff raises claims against Officer Gray in his official capacity, those claims are construed as claims against the Village of Cleves. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); Leach v. Shelby County Sheriff, 891 F.2d 1241, 1245 (6th Cir. 1989) ("A suit against an individual 'in his official capacity' has been held to be essentially a suit directly against the local government unit and can result in that unit's liability to respond to the injured party for his injuries.").

It is unclear from Plaintiff's complaint whether she intends to raise claims under 42 U.S.C. § 1981 or 42 U.S.C. § 1983 or both. To the extent that Plaintiff intended to raise claims against the Village of Cleves under § 1981, those claims must be construed as claims under § 1983 and analyzed as such. See Arauz v. Bell, No. 08-5186, 2009 WL 152148, at *3 (6th Cir. January 22, 2009) ("We have held that '§ 1983 provides an exclusive remedy for violations against state actors sued in their official capacities. An official capacity lawsuit against ... a state actor, for constitutional violations, such as race discrimination, cannot be brought under § 1981.'" (quoting Grinter v. Knight, 532 F.3d 567, 577 (6th Cir. 2008))); Arendale v. City of Memphis, 519 F.3d 587, 598-99 (6th Cir. 2008) (holding that "'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights

guaranteed in § 1981 by state governmental units;' no independent cause of action against municipalities is created by § 1981(c)" (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989)) (internal citation omitted)).

A city or municipality may be "liable under § 1983 only where the municipality itself causes the constitutional violation at issue." City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989). Respondeat superior is not available as a theory of recovery under § 1983. Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 691 (1978). Therefore, a plaintiff seeking to subject a city or municipality to § 1983 liability for the actions of its officers must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997).

Plaintiff alleges in her complaint that the Village of Cleves failed to properly train Officer Gray. (Complaint, Doc. 1 ¶ 17.) Plaintiff also claims that Officer Gray was executing a policy, practice, or custom, of the Village of Cleves by stopping Baird because she was traveling with a black male passenger. (Id.) Defendants move for summary judgment on these claims on the basis that there is no evidence showing that an unconstitutional custom, policy, or practice caused the alleged injury. Plaintiff does not address these claims at all in her response to Defendants' motion and the Court finds no evidence to support Plaintiff's claims. The Court therefore grants Defendants' motion for summary judgment as to Plaintiff's federal claims against the Village of Cleves and against Officer Gray in his official capacity.

    **C.**    **Federal Individual Capacity Claims Against Officer Gray**

        **1.**    **Section 1981 Claims**

Plaintiff also asserts a number of claims against Officer Gray in his individual capacity. Again, it is unclear whether Plaintiff brings these claims under 42 U.S.C. § 1981, 42 U.S.C. § 1983, or both. Neither the Defendants nor Plaintiff address this ambiguity in the summary judgment briefing. Nor do they analyze Plaintiff's claims under the framework established for § 1981 claims. Nonetheless, to the extent Plaintiff intended to raise a § 1981 claim, the Court addresses that claim herein. To succeed on a § 1981 claim against Officer Gray, Plaintiff must demonstrate that (1) she belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) Officer Gray intended to discriminate against her on the basis of race; and (3) Officer Gray's discriminatory conduct abridged a right enumerated in § 1981(a). Amini v. Oberlin College, 440 F.3d 350, 358 (6th Cir. 2006).

Plaintiff, a white female, is not alleging that Officer Gray discriminated against her on the basis of her race alone. Rather, she claims Officer Gray's intent was to discriminate against her because of the race of the man with whom she was traveling. It is not clear whether this allegation would satisfy the first prong of the test. The Court need not answer that question because, even assuming such a claim is cognizable under § 1981, there is no evidence that Officer Gray intended to discriminate against her on the basis of race. To satisfy the second prong of the test, Plaintiff must present evidence that Officer Gray's actions were racially motivated. Campbell v. Morrison, No. 94-1443, 1996 WL 511579, at *8 (6th Cir. September 9, 1996); Cunningham v. Sisk, 136 F. App'x. 771, 776 (6th Cir. 2005). Plaintiff's bare allegations are insufficient to support her claim at the summary judgment stage. See King v. City of Eastpointe, 86 F. App'x 790, 809-10 (6th Cir. 2003) (affirming the district court's grant of summary judgment to the defendant police officers as to the plaintiff's § 1981 claims where

there was no evidence that the plaintiffs were targeted because they were African American). Accordingly, to the extent Plaintiff brings a claim against Officer Gray under 42 U.S.C. § 1981, Officer Gray is entitled to summary judgment on that claim.

## 2. Section 1983 Claims

Having determined that Plaintiff's claims cannot survive under § 1981, the Court now determines the extent to which Plaintiff's claims may proceed under § 1983. Plaintiff alleges that Officer Gray violated her "constitutional rights to be free from false arrest, false imprisonment and unreasonable searches." (Doc. 1 at 16.) Defendants move for summary judgment on these claims on the basis that none of Plaintiff's constitutional rights were violated and that Officer Gray is entitled to qualified immunity.

The doctrine of qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine whether qualified immunity attaches, the Court first must ask if the facts alleged, taken in the light most favorable to the party asserting the injury, show that the government official's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001); see also Parsons v. City of Pontiac, 533 F.3d 492, 500 (6th Cir. 2008). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. If there is not a constitutional violation, then there is no need to inquire further about qualified immunity. Id. If there was a constitutional violation, the Court then must ask if the specific rights violated were clearly established. Id. at 202; see also Parsons,

533 F.3d at 500. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

Plaintiff alleges that she suffered from an unconstitutional search and seizure, implicating her Fourth Amendment rights. As an initial matter, the Court notes that no search occurred in this case. Plaintiff was not personally searched. Nor was her vehicle searched. The use of a narcotics detection dog to conduct an exterior investigation of Plaintiff's automobile does not amount to a search under the Fourth Amendment. City of Indianapolis v. Edmond, 531 U.S. 32, 40 (2000) (noting that "a sniff by a dog that simply walks around a car is much less intrusive than a typical search," and holding that the fact that officers walked a narcotics detection dog around the exterior of a car during a traffic stop does not transform the seizure into a search (internal quotation marks omitted)); United States v. Perez, 440 F.3d 363, 375 (6th Cir. 2006) (noting that the canine sniffs of the exterior of a vehicle did not constitute a search within the meaning of the Fourth Amendment).

Having determined that no search occurred, the Court focuses on the constitutionality of Plaintiff's detention, beginning with the initial traffic stop. An ordinary traffic stop by a police officer amounts to a "seizure" within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979). The Sixth Circuit has "developed two separate tests to determine the constitutional validity of vehicle stops: an officer must have probable cause to make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation." United States v. Blair, 524 F.3d 740, 748 (6th Cir. 2008); see also United States v. Mesa, 62 F.3d 159, 162 (6th Cir. 1995) (Once the purpose of a traffic stop is

completed, the officer may not continue the detention "unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention."). At the time that Officer Gray first spotted Baird's vehicle, he did not have reasonable suspicion that she was engaged in any criminal activity. Officer Gray claims that he had probable cause to make a stop for a civil infraction because he observed her following the car in front of her too closely. However, questions of fact remain as to whether the stop was supported by probable cause.[10]

Contrary to Officer Gray's testimony, Plaintiff testified that around the time when she was pulled over, she was not driving within twenty feet of the vehicle in front of her.[11] She also testified that there were cars traveling in front of and behind her. Officer Gray admitted that traffic was heavy that day and that there was another white car driving within a few cars from Plaintiff. In fact, when Officer Gray turned around to follow Plaintiff, he had to pull up next to her car to verify that it was her car and not the other white car he had seen following too closely. Further calling into question Officer Gray's testimony is the fact that he claimed that he verified that Plaintiff's car was the car he had spotted from the other side of the road by confirming that her car had some type of front end damage. However, both Plaintiff and Ware maintain that Plaintiff's car had no front end damage. As demonstrated by the conflicting testimony,

---

[10] For Fourth Amendment purposes, an officer has probable cause to arrest an individual when the facts and circumstances within the officer's knowledge at the time of the arrest are sufficient to warrant a reasonable person in believing that the individual had committed or is committing an offense. Wilson v. Morgan, Nos. 05-5615/5616, 2007 WL 268245, at *5 (6th Cir. Feb. 1, 2007). "Probable cause is an issue of fact for the jury to resolve if there are any genuine issues of material fact that are relevant to the inquiry." Swiecicki v. Delgado, 463 F.3d 489, 498 (6th Cir. 2006).

[11] One important question of fact is with regard to the law under which Plaintiff was cited for following too closely. Defendants do not disclose this law or submit a copy of the citation. Accordingly, the Court cannot determine what distance Plaintiff was required to maintain between her car and the car in front of her.

numerous questions of fact preclude this Court from finding that Officer Gray had probable cause to stop Baird for a traffic violation.

The Court must next determine whether Officer Gray is nonetheless entitled to qualified immunity. The right not to be stopped for a traffic violation absent probable cause to believe a violation has occurred is clearly established. See Schneider v. Franklin County, 288 F. App'x. 247, 251 (6th Cir. 2008) (denying qualified immunity to an officer who claimed he stopped a vehicle on the basis that the driver was speeding where questions of fact remained as to whether the officer had probable cause to believe a traffic violation had occurred); Whren v. United States, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). Taken in a light most favorable to Plaintiff, the facts indicate that Officer Gray's act of pulling Plaintiff over absent probable cause was not objectively reasonable in light of that clearly established right. See Fettes v. Hendershot, No. 06-CV-429, 2008 WL 4210466, at *4 (S.D. Ohio Sept. 8, 2008) (denying qualified immunity to an officer who claimed he pulled the plaintiff over because he observed him fail to stop at a stop sign where there was conflicting testimony as to whether the plaintiff ran the stop sign). Accordingly, Officer Gray is not entitled to qualified immunity as to Plaintiff's unlawful seizure claim.

Even were the Court to find that no constitutional violation occurred with regard to the initial stop, the Court would nonetheless find that the facts taken in a light most favorable to Plaintiff indicate that Plaintiff's continued detention exceeded the scope of the traffic stop and was not supported by reasonable suspicion of criminal activity. In Blair, the Sixth Circuit reiterated that "[o]nce the purpose for a traffic stop is completed, a police officer 'may not

further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.'" 524 F.3d at 752 (quoting United States v. Perez, 440 F.3d 363, 370 (6th Cir. 2006) (internal quotation marks omitted)). The Sixth Circuit has indicated that the purpose of a traffic stop is complete at the point when the officer has collected sufficient information to issue a citation. Id. at 752; United States v. Torres-Ramos, 536 F.3d 542, 551 (6th Cir. 2006). In this case, Officer Gray had sufficient information to issue a citation to Plaintiff after retrieving her license and running a background check on her and her vehicle, which he did immediately after pulling Plaintiff over. Officer Gray was permitted to seek permission to search her car during the normal course of the traffic stop. See Blair, 524 F.3d at 752. However, at the point when Baird denied consent, Officer Gray could not have continued to detain her unless he had reasonable suspicion of an ongoing crime to justify a Terry stop. See id. (finding that the scope of the search was extended beyond that of a mere traffic stop when the officer, after being denied consent to search the defendant's vehicle, informed the defendant that he believed drugs were in the car and called a canine unit to the scene); Torres-Ramos, 536 F.3d at 551 ("Issuing a speeding ticket does not require an officer to detain an individual in order to separately question a passenger. . .").

An officer may "stop and briefly detain a person for investigatory purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio," 329 U.S. 1, 30 (1968)). The reasonableness of the stop depends on two factors: "(1)whether there was a proper basis for the stop . . . ; and (2) whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the

15

reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." United States v. Hardnett, 804 F.2d 353, 356 (6th Cir. 1986). In determining whether Officer Gray had a particularized and objective basis for suspecting criminal activity, the Court considers the totality of the surrounding circumstances. United States v. Arvizu, 534 U.S. 266, 273 (2002).

The undisputed facts known to Officer Gray at the time that the traffic stop transformed into a Terry detention include: (1) Ware, the passenger of Baird's car, had been convicted of two or three minor drug offenses, carrying a concealed weapon, assault, and lying to a police officer during an investigation; (2) that Baird and Ware appeared nervous. Defendants cite other factors that should be considered in the analysis. First, Defendants claim, based on Ware's deposition testimony, that Ware tried to lie about his drug-related criminal history. The Court finds that assertion to be Defendants' characterization of Ware's testimony. Ware actually testified that:

> My answer was I ain't had so much as a weed ticket since '99, some 2000, and, you know, that was the only – that's all I can remember, is him asking me about – something about drugs, and I told him, no. I ain't got no drugs. I ain't been in trouble for no drugs no time recently, no time, especially not no hard type of drugs. I had a weed ticket. I told him I had a weed ticket back in 2000 because he was asking.

(Ware Dep. 15:4-11.) Ware's testimony demonstrates a question of fact as to what he actually told Officer Ware about his past drug convictions. Viewed in a light most favorable to Plaintiff, this testimony indicates that Ware disclosed past citations he had gotten for possession of marijuana, but indicated that he did not have and convictions for hard drugs and did not have any recent drug convictions. Defendants next argue that the Court should consider the fact that Officer Gray observed Ware make furtive movements after Baird was pulled over. However, this assertion is also disputed. Both Baird and Ware testified that Ware did not make any such

acts – specifically, that he did not reach behind or around the seat but rather remained still. Both disputes of fact ultimately come down to credibility determinations which this Court must leave to the jury. Accordingly, the Court will not consider those factors in determining whether the facts within Officer Gray's knowledge were sufficient to establish reasonable suspicion.

Looking only at the undisputed facts, the Court finds that Officer Gray lacked reasonable suspicion to justify the continued detention of Baird while waiting for a canine unit. The Sixth Circuit has previously found that reasonable suspicion was not present under circumstances similar to these, even where multiple factors were present. See United States v. Richardson, 385 F.3d 625, 630-31 (6th Cir. 2004) (finding that the motorists' nervousness, their allegedly conflicting explanations of travel plans, and the movement of one from the back to the driver's seat did not suffice to create a reasonable suspicion); Joshua v. DeWitt, 341 F.3d 430, 446 (6th Cir. 2003) (finding that factors including a driver's past criminal history, "illogical" travel route, nervousness, and unarticulated furtive gestures did not give rise to reasonable suspicion); United States v. Townsend, 305 F.3d 537, 542-45 (6th Cir. 2002) (finding that ten factors, including dubious travel plans, three cell phones in the car, and the driver's history of weapons offenses, did not amount to reasonable suspicion when considered as a whole); United States v. Smith, 263 F.3d 571, 588-94 (6th Cir. 2001) (concluding that nine factors, including the stoned appearance of one vehicle occupant, food wrappers in the car, and the nervousness of the occupants, did not establish a reasonable suspicion).

The Court notes that the two factors in this case – Ware's criminal history and the nervous appearance of Baird and Ware – are not inherently suspicious. As to nervousness, the Sixth Circuit has indicated that "although nervousness has been considered in finding reasonable

17

suspicion in conjunction with other factors, it is an unreliable indicator, especially in the context of a traffic stop. Many citizens become nervous during a traffic stop, even when they have nothing to hide or fear." Richardson, 385 F.3d at 630-31 (internal citations omitted); see also United States v. Henry, 429 F.3d 603, 613-14 (6th Cir. 2005) (discussing the unreliability of nervousness as a factor indicating reasonable suspicion); Blair, 524 F.3d at 753. Past criminal history may also be taken into consideration, but "by itself, does not create a reasonable suspicion that criminal activity is currently afoot, which is what the Supreme Court requires." DeWitt, 341 F.3d at 446. The Court recognizes that "even a string of innocent behavior added together may amount to reasonable suspicion of criminal activity." Richardson, 385 F.3d at 631. However, even when considered under the totality of the circumstances, the aggregate of the two factors does not amount to reasonable suspicion in this case.

It was well-established law at the time of Baird's traffic stop that an officer must conduct a traffic "stop with the least intrusive means reasonably available and not detain the individual longer than necessary to effectuate the purpose of the stop, unless the officer has an articulable reasonable suspicion that the individual is engaged in criminal activity." United States v. Hill, 195 F.3d 258, 267 (6th Cir. 1999); see also Richardson, 385 F.3d at 629. In light of this well-settled law and the case law discussed above, Officer Gray's act of further detaining Baird after she denied consent to search her vehicle was not objectively reasonable. Officer Gray, therefore, is not entitled to qualified immunity on Plaintiff's § 1983 unlawful detention claim and the Court denies summary judgment as to that claim.

    **D.**      **State Law Malicious Prosecution Claim**s

The Court turns to Plaintiff's last remaining claims against Defendants Village of Cleves and Officer Gray for malicious prosecution under Ohio law. Defendants moved for summary judgment as to both claims and Plaintiff failed to address these claims at all in her response. The Court therefore considers these claims to be waived and grants summary judgment to Defendants.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to strike and **GRANTS** in part and **DENIES** in part Defendants' Motion for Summary Judgment. Specifically, the Court grants summary judgment to Defendants as to all of Plaintiff's claims except for Plaintiff's § 1983 unlawful detention claim against Officer Gray in his individual capacity.

IT IS SO ORDERED.


        s/Susan J. Dlott
Chief Judge Susan J. Dlott
United States District Court